IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PENNSYLVANIA NATIONAL MUTUAL )
CASUALTY INSURANCE COMPANY, )
)
    Plaintiff, )
)
v. ) Civil Action No. 3:21cv365–HEH
)
RIVER CITY ROOFING, LLC, *et al.*, )
)
    Defendants. )

**MEMORANDUM OPINION**
**(Granting in Part Plaintiff's Motion for Summary Judgment)**

THIS MATTER is before the Court on Plaintiff Pennsylvania National Mutual Casualty Insurance Company's ("Plaintiff") Motion for Summary Judgment (the "Motion"), filed on December 27, 2021. (Mot., ECF No. 33.) The Motion seeks a judgment as a matter of law against Defendant Branch Builds, Inc. ("Branch") because Plaintiff alleges they have "no duty to pay any amount whatsoever to Branch in connection with the underlying lawsuit between Branch and River City [Roofing, LLC ("River City")]" nor does it have a "duty to defend or indemnify River City in the underlying lawsuit." (Mot. at 3.) The parties submitted memoranda in support of their respective positions and the Court heard oral argument on February 16, 2022. For the foregoing reasons, the Court will grant the Motion as to Branch as it relates to the duty to defend, but deny the Motion in all other respects.

## I. STANDARD OF REVIEW

The standard of review for summary judgment is well settled in the Fourth Circuit. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. A material fact is one that might affect the outcome of a party's case. *Id.* at 248; *Hogan v. Beaumont*, 779 F. App'x 164, 166 (4th Cir. 2019).

The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion. *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020). Accordingly, to deny a motion for summary judgment, "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate."

*Thompson Everett, Inc. v. Nat'l Cable Adver.*, 57 F.3d 1317, 1323 (4th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). When applying the summary judgment standard, courts must construe the facts in the light most favorable to the nonmoving party and may not make credibility determinations or weigh the evidence. *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007).

## II. BACKGROUND

The parties have submitted their respective statements of undisputed material facts pursuant to the Court's Local Rules, and the Court has reviewed the statements. As required, the Court resolves all genuine disputes of material fact in favor of the non-moving party and disregards those factual assertions that are immaterial. *Anderson*, 477 U.S. at 248, 255. Applying this standard, the Court concludes that the following narrative represents the facts for purposes of resolving Plaintiff's Motion.

This action stems from an underlying state court case in the Circuit Court for the City of Richmond. In that case, Branch filed suit against River City and another subcontractor. (State Compl. ¶¶ 2–3, ECF No. 1-6.) Branch was the general contractor for Shockoe Valley View Genesis, LLC ("Genesis") in charge of constructing the Shockey Valley Apartments (the "Project" or "apartments"). (*Id.* ¶ 4.) River City was a subcontractor of Branch who would cover "all roofing and all aluminum and composition siding at the Project according to the plans and specifications." (*Id.* ¶ 9.) The two entered into a contract in which River City warranted its materials and work, agreed to indemnify Branch, and agreed to make Branch an additional insured under their commercial general liability insurance contract. (*Id.* ¶¶ 8, 34, 36, 37.) A certificate of

3

occupancy was issued for the Project on April 5, 2017 and in October 2017, Genesis reported defects in the construction.[1] (Pl.'s Mem. Supp. ¶¶ 8–9, ECF No. 34; State Compl. ¶ 10.)

As it relates to River City, Genesis alleged "that the roof, aluminum and composition siding were not constructed or supplied in accordance with the plans, specifications and industry standards." (State Compl. ¶ 12.) Consequently, "there was water intrusion and property damage to the apartments." (*Id.*) Branch repaired or compensated Genesis for all damage done to the apartments. (*Id.* ¶¶ 15, 16.) River City never indemnified Branch for the costs of repair or damages. (*Id.* ¶ 17.) Branch then filed the state action claiming breach of contract by River City and another subcontractor and demanding judgment of $3,000,000 to cover the expenses Branch incurred. (*Id.* at 9.)

Plaintiff issued a commercial general liability insurance contract and an umbrella liability insurance contract (the "policies") to River City on March 15, 2016. (Pl.'s Mem. Supp. ¶¶ 3–4.) Under the policies, Plaintiff agreed to insure River City "subject to the contracts' respective terms, conditions, limitations and exclusions" including the payment of premiums. (*Id.* ¶¶ 21–22.) Plaintiff alleges that River City failed to pay the premiums in July 2017 and, thus, Plaintiff notified River City that both policies would be "canceled effective July 31, 2017, at 12:01 a.m." (*Id.* ¶ 24; Notices, ECF Nos. 1-3, 1-4.) River City never paid the premiums, therefore, the insurance policies were canceled effective

---

[1] Branch opposes the inclusion of any facts outside of the Complaint or the insurance policies, however, the Court believes inclusion of some extrinsic facts is necessary for a complete background on the matter even though those facts do not impact the Court's analysis of the Motion.

4

July 31, 2017. (Pl.'s Mem. Supp. ¶ 27.)

Plaintiff filed its Complaint in this Court on June 8, 2021 seeking a declaratory judgment that it has no duty to defend River City in the underlying state action, pay any amount which River City is found liable for in the underlying action, or pay any amount to River City, Branch or any other party in the underlying action. (Compl. at 21, ECF No. 1.) Branch filed its Answer to the Complaint on June 22, 2021 (ECF No. 6) and River City never made an appearance or filed an answer in this matter. The Clerk entered default against River City on August 4, 2021.[2] (ECF No. 19.)

### III. ANALYSIS

When a federal court has diversity jurisdiction, it must apply the choice of law rules of the forum state, here, Virginia. *CACI Intern., Inc. v. St. Paul Fire and Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). In Virginia, "the law of the place where an insurance contract is written and delivered" applies. *Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993); *Penn. Nat'l Mut. Cas. Ins. Co. v. Block Roofing Corp.*, 754 F. Supp. 2d 819, 822 (E.D. Va. 2010). The policies at issue here were delivered to River City at their office in Henrico, Virginia, thus, Virginia's substantive law governs. (Pl.'s Mem. Supp. at 10; ECF Nos. 1-2, 1-3.)

---

[2] Plaintiff filed a Motion for Default Judgment as to River City as well as this Motion for Summary Judgment. (ECF No. 31.) Branch requests that the Court either defer entry of default judgment until the underlying state action is resolved or hold that the entry of default judgment against River City does not affect Branch in the underlying action. (ECF No. 35 at 6.) Plaintiff concedes that the entry of default judgment should be deferred if the Court does not grant the Motion for Summary Judgment. (Pl.'s Reply at 3, ECF No. 46.) The Court will defer deciding whether to enter default judgment against River City until after it has issued this Memorandum Opinion and Order.

5

"[A]n insurer's duty to defend . . . is broader than [the] obligation to pay, and arises whenever the complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy." *AES Corp. v. Steadfast Ins. Co.*, 725 S.E.2d 532, 535 (Va. 2012) (internal quotation omitted). There is a well-established principle in Virginia, known as the Eight Corners Rule, that courts must only consider the allegations in the complaint and the insurance policy itself when deciding if there is a duty to defend. *Id.*; *Penn. Nat'l*, 754 F. Supp. 2d at 822–23; *see CACI Intern., Inc.*, 566 F.3d at 153. Virginia also recognizes the "Potentiality Rule" which states that "an insurer's duty to defend is triggered if there is any possibility that a judgment against the insured will be covered under the insurance policy." *CACI Intern., Inc.*, 566 F.3d at 155 (internal quotations omitted); *Bohreer v. Erie Ins. Grp.*, 475 F. Supp. 2d 578, 584 (E.D. Va. 2007). However, if it clearly appears that the insurance policy would not cover any of the allegations in the complaint, the insurer has no duty to defend. *Penn. Nat'l*, 754 F. Supp. 2d at 823; *AES Corp.*, 725 S.E.2d at 535–36.

In addition to determining the duty to defend, Plaintiff asks the Court to declare that they have no duty to indemnify any party in the underlying action. "Unlike the duty to defend . . . , a duty to indemnify springs from the facts actually discovered or proven at trial." *Penn Nat'l*, 754 F. Supp. 2d at 827. Courts in this district have refrained from determining an insurance company's duty to indemnify until after the state court has made its decision. *Id.*; *Capital Env't Servs., Inc. v. N. River Ins. Co.*, 536 F. Supp. 2d 633, 646 (E.D. Va. 2008); *Morrow Corp. v. Harleysville Mut. Ins. Co.*, 101 F. Supp. 2d

6

422, 435 (E.D. Va. 2000).³ At this stage, the Court will only decide whether Plaintiff has a duty to defend River City in the underlying state action and will refrain from ruling on the duty to indemnify. Thus, as to the duty to indemnify, the Motion will be denied.

First, Plaintiff urges the Court to look to precedent of other states which have adopted a broader application of the Eight Corners Rule and have ruled that declaratory judgment on the duty to defend and the duty to indemnify may be issued simultaneously when the issue is based on nonpayment of a premium. (Pl.'s Mem. Supp. at 11.) Relatedly, Plaintiff points out that other states allow courts to consider extrinsic evidence in deciding whether the insurance policy was still in place at the time of the alleged loss. (*Id.*) However, Virginia strictly adheres to the Eight Corners Rule, limiting the scope of review to the four corners of the complaint and the four corners of the policy. *Penn. Nat'l*, 754 F. Supp. 2d at 822–23; *CACI Intern., Inc.*, 566 F.3d at 153; *AES Corp.*, 725 S.E.2d at 535. Plaintiff has cited no cases where Virginia courts, or federal courts applying Virginia law, have considered extrinsic evidence in reviewing the duty to indemnify, and the duty to defend simultaneously, based on extrinsic evidence. Therefore, the Court's analysis is constrained to the underlying Complaint and the insurance policies Plaintiff issued to River City.

Next, Plaintiff argues that the policies were cancelled prior to the manifestation of the property damage. (Pl.'s Mem. Supp. at 13.) Plaintiff then implores the Court to

---

³ Plaintiff seems to concede this in the Complaint. It acknowledged that its duty to indemnify depends on the facts to be proven at the underlying trial and asked that, if the Court finds Plaintiff has a duty to defend, it maintain the right to "assert all of its further contractual grounds for challenging the duty of indemnification following a final judgment in the underlying lawsuit . . . ." (Compl. ¶¶ 10–11.)

7

adopt the "manifestation trigger rule" in determining when the property damage occurred. (*Id.* at 15–17.) However, this argument relies on extrinsic evidence which the Court may not consider under the Eight Corners Rule.[4] Nowhere in the underlying Complaint or the policies does it say that the policies were cancelled before the end of the policy period. While it is clear from the policy cancellation notices that the policies were cancelled in July 2017, it is not clear from the eight corners that constrain the Court's analysis.[5] Consequently, the policy cancellations cannot guide the Court's determination on the duty to defend.

Plaintiff next asserts that "River City's allegedly faulty work . . . is not insured" because the damages arose from River City's own work, the work and materials were defective, and the contractual liability exclusion applies. (*Id.* at 21–28.) In the State Complaint, Branch alleges that River City breached its contract with Branch. (State Compl. ¶¶ 34–36.) Specifically, Branch argues that River City warranted that its work was free from deficiencies in workmanship and materials and that they would indemnify and hold Branch harmless from claims related to River City's work. (*Id.*) Branch asserts that the work and materials provided by River City were defective and that Branch

---

[4] At oral argument, Plaintiff's counsel made a comment that the cancellation notices were part of the face of the policy. However, this argument was not raised in Plaintiff's brief and does not comport with their argument urging the Court to consider extrinsic evidence. Further, Plaintiff provided no legal backing to support the assertion that a cancellation notice issued months after the policy was signed would become part of the face of the policy.

[5] While the Court may not base its analysis on the cancellation due to nonpayment because it is not within the eight corners, the Court is troubled by the thought that an insurance company would have to expend the resources to defend an insured when the insured has failed to pay their premiums. However, since Virginia courts adhere so strictly to the Eight Corners Rule, the Court will not consider the extrinsic cancellation notices.

8

incurred expenses as a direct result. (*Id.* ¶ 38.) At first glance the policies may seem to cover the damage alleged by Branch, however, the insurance policies include a vast number of "exclusions," which bar coverage in this case.[6] (Policy at 23–28, ECF No. 1-2.)

First, the policy applies to "property damage" only if it was caused by an "occurrence that takes place in the 'coverage territory.'" (Policy at 22.) *Excluded* from this is "property damage to your work arising out of it or any part of it." (*Id.* at 27.) "Your work" is defined as "work or operations performed by you or on your behalf and" includes warranties or representations as to the "fitness, quality, durability, performance or use of 'your work.'" (*Id.* at 40.) Additionally, "occurrence" is defined as "an *accident*, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 38 (emphasis added).) The State Complaint alleges that "the roof, aluminum and composition siding were not constructed or supplied in accordance with the plans, specifications and industry standards." (State Compl. ¶ 12.) The alleged damage to the apartments was clearly River City's own work or arose from River City's work. River City was contracted to handle all of the roofing, which Genesis alleges was faulty and led to water intrusion and damage. (*Id.* ¶ 12.) Any resulting damage to portions of the property not built by River City, but which was caused by River City's defective job performance, would be property damage "arising out of" River City's work. Moreover, the damage does not fall into the definition of "occurrence" as there is no alleged accident, but instead merely faulty work and materials.

---

[6] Both policies include many of the same exclusions and definitions. Unless otherwise stated, an exclusion or definition cited is present in both policies.

9

Further, the policies include an exclusion for "impaired property" which bars coverage for damage to certain portions of the property other than River City's work. (Policy at 37.) "Impaired property" includes "tangible property, other than . . . 'your work,' that cannot be used or is less useful because . . . it incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous." (*Id.*) This exclusion only applies if the property can be restored by repair, removal, or adjustment of "your work." (*Id.*) This is exactly what Branch is alleging: the work by River City was defective in workmanship and materials and that defective work caused damage to the roof itself, and other parts of the property. (State Compl. ¶¶ 38–39, 43–44.) Moreover, Branch repaired River City's allegedly insufficient work and that is why it filed suit against River City to recoup the expenses it incurred by repairing the roofing and related damage. (*Id.* ¶¶ 15–16.) Thus, any damage caused by River City's faulty workmanship or materials would be excluded by the "your work" exclusion or the "impaired property" exclusion.

Plaintiff also points to a "contractual liability" exclusion which excludes "property damage" the insured is obligated to pay "by reason of the assumption of liability in a contract or agreement." (Policy at 23.) This exclusion does not apply to liability that the insured would incur absent the contract. (*Id.*) The only liability River City would have absent any contract or agreement is liability in tort. Although Genesis alleges that the work was done negligently, Branch's claims against River City all stem from the breach of a contractual duty. (State Compl. ¶¶ 40, 45.) Virginia courts have held that allegations of "negligent performance of contractual duties . . . are simply not actionable

10

in tort, and do not convert the malfunction or damage . . . into an occurrence." *W. World Ins. Co. v. Air Tech, Inc.*, No. 7:17cv518, 2019 WL 14434666, at *7 (W.D. Va. Mar. 29, 2019) (quoting *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998)) (internal quotations omitted). Thus, there being only a claim for contractual liability in the State Complaint, the contractual liability exclusion applies and would bar coverage under the policies even if Branch prevailed on its claims against River City.

In its response and during oral argument, Branch attempted to refute Plaintiff's arguments by simply saying they are indemnity arguments and not duty to defend arguments. (Resp. Opp'n at 14–15, ECF No. 36.) Yet, the exclusions Plaintiff cites are within the four corners of the policies and thus, it is proper for the Court to consider them under the Eight Corners Rule. *See Penn. Nat'l*, 754 F. Supp. 2d at 822–23. Therefore, Branch's insistence that they are irrelevant at this stage is misplaced. Finally, Branch mentions, just briefly, that River City's work damaged the property and that Genesis could have sued River City under a tort-liability theory. However, the State Complaint only alleges breach of contract claims and, as discussed above, River City's duty to both Branch and Genesis is contractual. Any judgment against River City in the underlying action would be for contractual liability, which is excluded by the policies' contractual liability exclusion.

The language of the policies is fraught with exclusions, exceptions to exclusions, definitions, and subsequently added provisions, but an in depth reading of the policy leads the Court to conclude there is no possibility that a judgment against the insured will be covered under the policies. Virginia courts have stressed the importance of the

11

Potentiality Rule "wherein 'an insurer's duty to defend is triggered if there is any possibility that a judgment against the insured will be covered under the insurance policy.'" *CACI Intern.*, 566 F.3d at 155 (quoting *Bohreer*, 475 F. Supp. 2d at 584). Nonetheless, "if it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations, it has no duty to defend." *AES Corp.*, 725 S.E.2d at 535–36; *see Penn. Nat'l*, 754 F. Supp. 2d at 823. Here, every allegation Branch alleges against River City is excluded by one of the policies' many exclusions. Particularly, no accident occurred, and the alleged damage was entirely attributable to River City's own work, or arose out of River City's work, and was able to be repaired. Beyond even those exclusions, the contractual liability exclusion, which encompasses all of Branch's allegations regarding River City's breach of contractual obligations, forecloses any argument that Plaintiff may be liable under the policies.

## IV. CONCLUSION

Accordingly, because no judgment, based on the allegations against River City, would be covered under the policies, there is no genuine dispute as to any material fact regarding the duty to defend. Therefore, this Court concludes that Plaintiff does not have a duty to defend River City in the underlying state action. As stated above, the motion will be denied as to the duty to indemnify as a ruling on that duty should be deferred until after a final ruling in the underlying state case.

An appropriate Order will accompany this Memorandum Opinion.

It is so ORDERED.

                                                                         /s/
                                          Henry E. Hudson
                                          Senior United States District Judge

Date: March 3, 2022
Richmond, VA

13