IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**PENNSYLVANIA NATIONAL MUTUAL
    CASUALTY INSURANCE COMPANY**

       **Plaintiff**

v.                                               C.A. No. 3:21-cv-00365

**RIVER CITY ROOFING, LLC., et al.**

       **Defendants**

## BRANCH BUILDS, INC.'s MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION

Branch Builds, Inc. ("Branch"), by counsel, submits the following Memorandum in Support of its Motion to Reconsider this Court's Order (Docket No. 49) and accompanying memorandum opinion (Docket No. 48) relating to Penn National Mutual Insurance Casualty Insurance Company's ("Penn National") Motion for Summary Judgment.

## BACKGROUND

Penn National filed a motion for summary judgment (Docket # 33); an accompanying memorandum in support (Docket #34); and a subsequent a reply brief (Docket # 45). Branch filed a memorandum in opposition to the motion for summary judgment (Docket # 36). Oral argument was held on the motion on February 16, 2022. This Court entered an Order on March 3, 2022, granting in part and denying in part Penn National's motion for summary judgment. Penn National has now filed a Motion to Reconsider this Court's Order (Docket # 52) and accompanying memorandum in support (Docket # 53).

1

In this Court' order and accompanying memorandum opinion, as it relates to this Motion to Reconsider, the Court ruled as follows:

1. It appears that the Court ruled that there was no coverage under the "insuring agreement" of the policies relating to "property damage" and "occurrence";

2. The Court ruled that the "your work" exclusion of the policies precluded coverage for the allegations of the underlying Complaint.

3. The Court ruled that the "impaired property" exclusion of the policies precluded coverage for the allegations of the underlying Complaint.

4. The Court ruled that there was a "contractual" exclusion in the policy which precluded coverage for the allegations of the underlying Complaint.

5. The Court ruled as a matter of law that no allegation of the underlying Complaint could potentially be covered by the insurance policies and, therefore, granted Penn National summary judgment as to the duty to defend.

6. Finally, the Court denied Penn National's motion for summary judgment as it applies to the duty to indemnify, deferring ruling until the underlying state court case is tried and concluded.[1]

In refusing to grant to Penn National summary judgment on the duty to indemnify, the Court's ruling suggests that some facts, expert opinions, etc., developed during the underlying trial may trigger the duty to indemnify under the policies. As set forth below, the Court erred in ruling that there was no allegation of the underlying Complaint that could potentially be covered

---

[1] This makes sense, as River City could prevail in the underlying suit, thus mooting any coverage analysis. Nautilus Ins. Co. v. Strongwell Corp., 968 F. Supp. 2d 807, 824 2014 U.S. Dist. LEXIS 24608 (W.D. Va. 2014)("the rule prevents unnecessary litigation and preserves judicial resources, since the time spent resolving the issue of indemnification "may be wasted if the insured ultimately prevails in the underlying suit."")

2

by the insurance policies and no duty to defend; accordingly, the Court correctly deferred ruling on the duty to indemnify until after the underlying trial is concluded.

## STANDARD

Branch does not dispute the general statement for the re-evaluation of an interlocutory order as set forth in Penn National's Memorandum in Support of Motion to Reconsider (Memo in Support, P. 4-5). However, Branch notes that the general standard is much broader than suggested:

> Nonetheless, courts often consider the same factors and generally do not grant such motions unless "'the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension . . . [or] a controlling or significant change in the law or facts since the submission of the issue to the Court [has occurred].'" McAfee v. Boczar, No. 3:11CV646, 2012 U.S. Dist. LEXIS 90216, at*5 (E.D. Va. June 28, 2012) (quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983)). "Reconsideration is also appropriate when 'the prior decision was clearly erroneous and would work manifest injustice.'" McCoy v. Robinson, No. 3:08CV555, 2011 U.S. Dist. LEXIS 136718, at *27 (E.D. Va. Nov. 28, 2011) (quoting Am. Canoe Ass'n, 326 F.3d at 515).

Nautilus Ins. Co. v. Strongwell Corp., 968 F. Supp. 2d 807, 823, 2014 U.S. Dist. LEXIS 24608 (W.D. Va. 2014).

## INTRODUCTION TO ARGUMENT

The Court's memorandum opinion was correct in noting that River City entered into subcontracts with Branch and its scope of work was all roofing work and all aluminum and composition siding at the Project according to the plans and specifications. The underlying Complaint in this action sets forth the basis for the action against River City:

> 10. After the Project was completed, Genesis alleged the discovery of substantial structural and material defects at the Apartments; work that was not constructed in accordance with approved architectural, engineering, construction

3

> plans, drawings and specifications; defective workmanship and materials; and negligence in the selection of materials and building techniques used in the completion of the work. As a result of the alleged defects in the work, Genesis asserted a claim for the **repair, restoration and replacement of damaged building components, for property damages, and for damages to parts of the Project that were and were not within the scope of work of River City** or DCQ.
>
> ….
>
> 12. Specifically, as to River City, Genesis alleged that the roof, aluminum and composition siding were not constructed or supplied in accordance with the plans, specifications and industry standards, was negligent, and, as a result, **there was water intrusion and property damage to the Apartments**.
>
> ….
>
> 38. River City breached these and other terms of the RC Subcontract by providing defective materials and/or workmanship on the Project.
>
> 39. As a direct result of the breach by River City of the RC Subcontract, Branch was forced to incur costs and expenses in the repairs of the Project, **and all associated water intrusion damage, and property damage to parts of the Project other than the work of River City, and other property damages.**
>
> ….
>
> 43. River City breached this implied warranty by providing defective materials and/or workmanship on the Project.
>
> 44. As a direct result of the breach by River City of its implied warranty, Branch was forced to incur costs and expenses in the repairs of the Project, **and all associated water intrusion damage, and property damage to parts of the Project other than the work of River City, and other property damages.**

(emphasis added).

Clearly, then, Branch alleged that River City's defective work caused damage to other parts of the project, including property damage to parts of the project other than the work of River City. This makes sense – if the roof and siding of the project (part of River City's work) allowed water intrusion into the building, then the substrate and vapor

4

barrier of the building behind the siding (not part of River City's work) would suffer water damage; the insulation behind the substrate of the building would suffer water damage (not part of River City's work); and eventually the interior drywall and floors of the building would suffer water damage (not part of River City's work). Branch alleged that it had to make repairs to all of the property damage of the building – not just River City's defective work.[2]

With this background in mind, Branch suggests that the Court erred in its ruling on the duty to defend as the law is clear that the insuring agreements provide coverage for at least some of the damages sought in the underlying Complaint and that the exclusions relied upon by Penn National and the Court do not clearly and unambiguously mandate that there is no coverage for the <u>all</u> of the allegations of the underlying Complaint.

A.     THE COURT ERRED IN FINDING THERE WAS NO "ACCIDENT" OR "OCCURRENCE" COVERED BY THE INSURING AGREEMENT.

In this Court's memorandum opinion, the Court notes that the policy provides coverage to "property damage" if caused by an "occurrence" (which is typically called the "insuring agreement" of a policy). The Court then notes that the policy has an exclusion for "property damage **to your work** arising out of it or any part of it." (Memorandum Op. P. 9)(emphasis added). The Court then concludes:

> Any resulting damage to portions of the property not built by River City, but which was caused by River City's defective job performance, would be property damage "arising out of" River City's work. Moreover, the damage does not fall into the definition of "occurrence" as there is no alleged accident, but instead faulty work and materials.

---

[2] Branch will present evidence at the underlying trial that it was forced to remove the defective siding to make repairs to the portions of the building behind the siding; was forced to remove and replace the substrate, including the vapor barriers; was forced to remove and replace insulation behind the substrate; and was forced to repair or replace portions of drywall and/or flooring that had water damage.

5

Id.

Penn National never specifically argued that there was no "property damage" caused by an "accident" or "occurrence" under the insuring agreement. Penn National's main argument relating to coverage under the insuring agreement relied upon the alleged cancellation of the policy prior to property damage, which argument the Court correctly rejected because of the eight-corners rule. The remaining arguments of Penn National related to the exclusions, which are discussed below.

Aside from the insuring agreement, the Court then focused on the "your work" exclusion. However, the "your work" exclusion only applies to property damage to "your work" – River City's work (roofing and siding)– not any property damage to the rest of the building "arising out of" your work.[3]

In making its ruling on the insuring agreement and the "your work" exclusion, this Court did not take into account or address the fact that federal courts in Virginia have consistently held that if a subcontractor's defective work causes damages to other parts of the project not part of its work, there is property damage and an accident/occurrence under the insuring agreement. W. World Ins. Co. v. Air Tech, Inc., 2019 U.S. Dist. LEXIS 53683, 2019 WL 1434666 (W.D. Va. 2019)(citing Nautilus Ins. Co. v. Strongwell Corp., 968 F. Supp. 2d 807, 816 (W.D. Va. June 5, 2013); Stanley Martin Cos., Inc. v. Ohio Cas. Grp., 313 Fed. App'x 609, 614 (4th Cir. 2009) (unpublished); French v. Assurance Co. of America, 448 F.3d 693, 703-706 (4th Cir. 2006); Dragas Mgmt. Corp. v. Hanover Ins. Co., 798 F. Supp. 2d 758, 763 (E.D. Va. July 21, 2011)).

Here, respectfully, the Court misapprehended applicable controlling law. By alleging in the underlying Complaint that River City's defective work on the roof and siding caused damage

---

[3] The "your work" exclusion is discussed below.

to other parts of the project, not within the scope of River City's work (e.g., the substrate, insulation, etc.), Branch clearly alleged both property damage and an accident/occurrence covered by the insuring agreement of the policies.

Having brought the allegations of the Complaint within the insuring agreement, Branch will address the exclusions argued by Penn National and relied upon by this Court.

B.  THE COURT ERRED IN FINDING THAT THE EXCLUSIONS MERIT A FINDING THAT NOTHING ALLEGED IN THE UNDERLYING COMPLAINT COULD POTENTIALLY BE COVERED.

As the allegations of the underlying Complaint are within the insuring agreement, the burden then shifts to Penn National to prove that exclusions of the policy clearly and unambiguously preclude coverage for all allegations of the underlying Complaint.

> For Nautilus to be relieved of its duty to defend, the allegations in the underlying action must clearly and unambiguously establish that one or more of the exclusions apply to bar coverage for the claims asserted by [the insured]. See Fuisz, 61 F.3d at 245 ("[W]here both covered and excluded acts are alleged, the duty to defend attaches."); Floyd v. Northern Neck Ins. Co., 245 Va. 153, 427 S.E.2d 193, 196, 9 Va. Law Rep. 917 (Va. 1993) ("[T]o be effective, the exclusionary language must clearly and unambiguously bring the particular act or omission within its scope.").

Nautilus Ins. Co. v. Strongwell Corp., 968 F. Supp. 2d 807, 817-118, 2013 U.S. Dist. LEXIS 79163, 2013 WL 2443942 (W.D. Va. 2013); see also, Fuisz v. Selective Ins. Co. of Am., 61 F.3d 238, 2421995 U.S. App. LEXIS 20388, 23 Media L. Rep. 2325 (4th Cir. 1995)("Moreover, the burden rests on the insurer to establish the clear applicability of a particular exclusion from coverage.")

As recognized by the Court in its Memorandum Opinion, Branch argued that the exclusions raised by Penn National were really arguments on the duty to indemnify – not the

7

duty to defend. This is because the exclusions relied upon by Penn National may or may not preclude coverage for <u>some but not all</u> of the allegations of the underlying Complaint and depend solely upon the evidence presented at the underlying trial (and the findings at the underlying trial).

In effect, Penn National relied upon exclusions in an attempt to pick apart certain allegations of the underlying Complaint. However, as recognized by the Court, the inquiry at the duty to defend stage is whether there is <u>any</u> allegation of the underlying Complaint that could potentially be covered. <u>Liberty Univ., Inc. v. Citizens Ins. Co. of Am.</u>, 792 F.3rd 520, 532-533 (4th Cir. 2015); <u>W. World Ins. Co. v. Air Tech Inc</u>., 2019 U.S. Dist. LEXIS 53683 *; 2019 WL 1434666 (W.D. Va. 2019). The inquiry is not whether <u>all</u> of the allegations of the underlying Complaint are within coverage; rather the inquiry is whether there is at least <u>one</u> allegation of the underlying Complaint that could potentially be covered. <u>Fuisz v. Selective Ins. Co. of Am.</u>, 61 F.3d 238 (4th Cir. 1995) ("[W]here both covered and excluded acts are alleged, the duty to defend attaches."); <u>Donnelly v. Transp. Ins. Co.</u>, 589 F.2d 761, 767 (4th Cir. 1978). Where an insurer relies upon exclusions, it has the burden to show that "**all** possible claims against the [insured] fall within specific policy exclusions." <u>Med. Mut. Ins. Co. v. Image Guided Pain Mgmt., P.C.</u>, Civil Action No. 7:13-cv-00499, 2014 U.S. Dist. LEXIS 54733 (W.D. Va. Apr. 18, 2014)(emphasis added).

With these general principles in mind, it is clear that not all of the allegations of the underlying Complaint clearly and unambiguously fit within the exclusions; therefore, there is a duty to defend.

8

1. <u>The "Your Work" Exclusion</u>

As noted above, the Court relied in part on the "your work" exclusion of the policies. However, this was clearly in error or a misapprehension of the allegations of the underlying complaint. The "your work" exclusion and applicable definition are as follows:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

….

    **2.**    **Exclusions**

….

        **l.**    **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it…[4]

….

**SECTION V – DEFINITIONS**

….

    **22.**    "Your work":

        a.    Means:

            (1)    Work or operations performed by you or on your behalf; and

            (2)    Materials, parts or equipment furnished in connection with such work or operations.

This exclusion by its terms only applies to River City's work – the roofing and siding – not damage to third party's work. <u>Limbach Co., LLC v. Zurich Am. Ins. Co.</u>, 396 F.3d 358, 365

---

[4] The work of River City may have been done by subcontractors, which is an exception to the "your work" exclusion, but which will rely upon facts proved in the underlying trial and was not necessary to be pled as part of the underlying complaint.

2005 U.S. App. LEXIS 1156 (4th Cir. 2005)("By its plain language, the "your work" exclusion only excludes coverage for damage to an insured's work that arises out of the insured's faulty workmanship. It does not exclude coverage for damage to a third party's work. See Missouri Terrazzo Co. v. Iowa Nat'l Mut. Ins. Co., 740 F.2d 647, 650 (8th Cir. 1984)(affirming the district court's decision that a similar exclusion for work performed by the insured "did not bar coverage for injury to property other than that of the insured.")"); see also, Jessco, Inc. v. Builders Mut. Ins. Co., 472 Fed. Appx. 225, 2012 U.S. App. LEXIS 6502, 2012 WL 1035721 (4th Cir. 2012).

As such, this is clearly a duty to indemnify argument. If River City in the underlying case is found liable not only for the costs of the removal and replacement of its defective work, but also for physical damages to other parts of the building, there would be a duty to not only defend but also to indemnify for some at least some of the damages.[5] That is why this is a question to be resolved only after the underlying trial is concluded. Because the "your work" exclusion does not clearly preclude recovery for all of the allegations of the underlying complaint, it does not bar a duty to defend.

    2.    The "Impaired Property" Exclusion

Once again, this Court's application of the "impaired property" exclusion was either based upon a misapprehension of applicable law, or upon the misapprehension of the underlying complaint and the insurance policies. The "impaired property" exclusion and definition of the policies provide:

**SECTION I – COVERAGES**
        **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE**

---

[5] There might even be coverage for the replacement of the defective work of River City under the "rip and tear" analysis applied by a number of courts – that is, if a repair entails removing defective work of the subcontractor to repair damages to other parts of the project, there might be coverage for the removal as well. Clear, LLC v. American and Foreign Insurance Co. 2008 WL 818978, at *7 (D. Alaska Mar. 24, 2008). However, this will depend on the facts presented at the underlying trial and the ruling thereupon.

10

      **LIABILITY**

….

        **2.**    **Exclusions**

….

        **m.**    **Damage to Impaired Property Or Property Not Physically Injured**

      "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    **(1)**    A defect, deficiency, inadequacy or dangerous condition in … "your work"; or

    **(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

….

**SECTION V – DEFINITIONS**

….

    **8.**    "Impaired property" means tangible property, other than … "your work", that cannot be used or is less useful because:

    **a.**    It incorporates … "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.**    You have failed to fulfill the terms of a contract or agreement;

    If such property can be restored to use by the repair, replacement, adjustment or removal of … "your work" or your fulfilling the terms of the contract or agreement.

The portion of the first part of the exclusion which applies to "property that has not been physically injured", clearly does not apply to the allegations of the underlying complaint. Branch sufficiently alleges that other property of the building, not part of River City's work, were physically damaged.

The definition section of "impaired property" also excludes application to the allegations of the underlying complaint. The damage to the other parts of the building (e.g., substrate, vapor

11

barrier, insulation, etc.) clearly cannot be "restored to use" simply by the repair or replacement of River City's defective work ("restored to use by the repair, replacement, adjustment or removal of … **"your work"**")(emphasis added).  Removing and replacing the roof and siding does not magically fix the water-intrusion property damage to the rest of the building (e.g., the deteriorating substrate (not part of River City's work) that had to be removed and replaced).  Nor is that damage magically fixed by River City fulfilling the terms of its contract, which was to install roofing and siding.  Branch in the underlying Complaint does not allege that it only had to repair or replace River City's defective work – but also all of the other physically damaged parts of the building not within River City's scope of work,

Moreover, the use of the terms "cannot be used or less useful" cannot be read so broadly to include "property damage".  Penn National knew what "property damage" was in writing the policy.  Branch did not allege in the underlying Complaint that the other parts of the building could not be used, or were less useful – Branch alleged that they were physically damaged.  If Penn National meant to exclude "property damage" to other parts of the building, it would have used that term and not "cannot be used or less useful".[6]  As this Court is aware, ambiguous terms of an exclusion are applied in favor of coverage and against the insurer:

> Exclusionary language in an insurance policy will be construed most strongly against the insurer and the burden is upon the insurer to prove that an exclusion

---

[6] A broad reading of this language – "cannot be used or less useful" - to mean "property damage" to other parts of the building, combined with the "your work" exclusion, would mean that there is absolutely no coverage for any property damage caused by an occurrence under a CGL policy.  This would render the "insuring agreement" meaningless, which a Court should not do.  St. Paul Fire & Marine Ins. Co. v. Gen. Injectables & Vaccines, Inc., Civil Action No. 98-0737-R, 2000 U.S. Dist. LEXIS 2597 (W.D. Va. Mar. 3, 2000)("In addition, the policy exclusions will not be interpreted in a manner which "renders the insurance contract nearly meaningless and the insurance nearly worthless." Caldwell v. Transportation Ins. Co., 234 Va. 639, 364 S.E.2d 1, 3 (Va. 1988); see also D'Annunzio v. Security-Connecticut Life Ins., 186 W. Va. 39, 410 S.E.2d 275, 279 (W.Va. 1991) ("A policy should never be interpreted so as to create an absurd result, but instead should receive a reasonable interpretation, consistent with the intent of the parties.").).

applies. Reasonable exclusions not in conflict with statute will be enforced, but it is incumbent upon the insurer to employ exclusionary language that is clear and unambiguous. An ambiguity, if one exists, must be found on the face of the policy. And, language is ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time. Finally, doubtful, ambiguous language in an insurance policy will be given an interpretation which grants coverage, rather than one which withholds it.

Smith v. Allstate Ins. Co., 241 Va. 477, 480, 403 S.E.2d 696, 696 1991 Va. LEXIS 50, 7 Va. Law Rep. 2313 (Va. 1991)(quoting American Reliance Insurance Co. v. Mitchell, 238 Va. 543, 547, 385 S.E.2d 583, 585 (1989)).

As such, this Court misapplied the terms of the policy and the law. The damage to the other parts of the building was not "impaired property" damage excluded from coverage. As such, the "impaired property" exclusion does not clearly preclude recovery for <u>all</u> of the allegations of the underlying complaint, and it does not bar a duty to defend.

    3.    The "Contractual Liability" Exclusion

This Court's application of what it calls a "contractual exclusion:" is either based upon a misapprehension of law, or upon the misapprehension of the underlying complaint and the applicable insurance policies.

In its memorandum in support of its motion for summary judgment, Penn National's argument about the "liability assumed by contract" exclusion is based solely upon the indemnity provision of the subcontract between Branch and River City.

> Branch has alleged **that River City contractually agreed to defend or indemnify Branch** from Genesis' claims and demands, and that River City is therefore contractually liable to it to indemnify it for the costs Branch allegedly has incurred in performing its "contractual and legal" duties to Genesis.

(Penn National's Memorandum in Support, Docket No. 34, Page 29)(emphasis added).

13

Nevertheless, the Court found a general "contractual liability" exclusion not argued by Penn National. (Memorandum Op. P. 10-11). There is no such thing. The insuring agreement, as noted above, creates coverage for property damage caused by an occurrence or accident. It does not exclude property damage caused by a breach of contract or warranty, as long as there is an occurrence or accident which causes property damage. Stanley Martin Cos. v. Ohio Cas. Grp., 313 F. App'x 609 (4th Cir. 2009); Dragas Mgmt. Corp. v. Hanover Ins. Co., 798 F. Supp. 2d 758 (E.D. Va. 2011); Nautilus Ins. Co. v. Strongwell Corp., 968 F. Supp. 2d 807 (W.D. Va. 2013).[7] Otherwise, all of the Virginia federal decisions and Fourth Circuit decisions cited on Page 6 above would have found no coverage – they were all defective construction cases (liability assumed by contract/warranty), where the defective work damaged other parts of the building and was deemed an "occurrence" and "property damage" under the law. A Court should not render exclusions to in effect nullify all coverage under the "insuring agreement". (See fn 6, supra)

The only "contractual liability" exclusion of the insurance policy is found in the following:

**SECTION I – COVERAGES**

    **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

….

        **2.    Exclusions**

….

---

[7] Obviously, River City did not intend that its performance of its scope of work would physically damage other parts of the building not within its scope of work. That result was not "intended" or "expected" by River City, and was an "accident" or "occurrence".

14

      **b.**    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement…[8]

Branch argued at the hearing on Penn National's motion for summary judgment that this exclusion only applies to the portion of the subcontract that contained a specific indemnity agreement between Branch and River City. That indemnity clause of the subcontract is pled in the underlying Complaint as an <u>additional</u> ground for the action against River City (not the sole ground) and this allegation only relies upon one portion of the subcontract - Article 7.1 of Appendix F of the River City Subcontract. (Underlying Complaint Para. 36).

The exclusion relied upon by Penn National and the Court - "liability assumed by contract" – only applies to indemnity agreements, not warranty or other contractual duties. <u>Olympic, Inc. v. Providence Washington Insurance Co.</u>, 648 P2d 1008 (Alaska 1982); <u>Gibbs M. Smith v. United States Fidelity & Guaranty Co.</u>, 949 P2d 337 (Utah 1997); <u>Indiana Ins. Co. v. Kopetsky</u>, 11 NE.3d 508, 523, 525 (Ind. Ct. App. 2014)(joining the majority of jurisdictions on this issue); <u>Ewing Constr. Co. v. Amerisure Ins. Co.</u>, 420 SW3d 30, 35 (Tex. 2014); <u>Travelers Prop. Cas. v. Peaker Services</u>, 855 NW 2d 523, 533. 535 (Mich. Ct. App. 2014); <u>American Family Mut. Ins. Co. v. American Girl, Inc.</u>, 268 Wis.2d 16, 33, 2004 WI 2, 673 N.W.2d 65 (2004); <u>Am. Towers LLC v. BPI, Inc.</u>, 130 F. Supp. 3d 1024, 2015 U.S. Dist. LEXIS 121921 (E.D. Ky. 2015).

As explained by the West Virginia Supreme Court of Appeals:

> What is meant by the phrase "liability assumed by the insured under contract" in insurance policies has been the topic of litigation in other jurisdictions. An Alaska

---

[8] While Penn National and this Court take time to discuss the "insured contract" exception of subparagraph (b)(2) of the exclusion, and "tort" or "contract liability" under that exception, this does not matter for a duty to defend analysis. The question is whether the exclusion itself clearly provides that there is no possible coverage for all of the allegations of the underlying complaint, whether or not there was an "insured contract" covered by the exclusion's exception.

15

>case - <u>Olympic, Inc. v. Providence Washington Ins. Co., 648 P.2d 1008, 1011 (Alaska 1982)</u> - provides the following explanation for the phrase:
>
>"Liability assumed by the insured under any contract" refers to liability incurred when one promises to indemnify or hold harmless another, and does not refer to the liability that results from breach of contract.
>
>The phrase does not provide coverage for liability caused by a breach of contract; rather, the coverage arises from a specific contract to assume liability for another's negligence. The phrase has been interpreted "to apply only to indemnification and hold-harmless agreements, whereby the insured agrees to 'assume' the tort liability of another." <u>Gibbs M. Smith, Inc. v. U.S.F.&G., 949 P.2d 337, 341 (Utah 1997)</u>.
>
>We hold that the phrase "liability assumed by the insured under any contract" in an insurance policy, or words to that effect, refers to liability incurred when an insured promises to indemnify or hold harmless another party, and thereby agrees to assume that other party's tort liability.

<u>Marlin v. Wetzel County Bd. of Educ.</u>, 212 W. Va. 215, 222, 569 S.E.2d 462, 469, 2002 W. Va. LEXIS 93 (W.Va. 2002)

This only makes sense. If "liability assumed by contract" is read too broadly, there would never be commercial general liability insurance coverage for construction defects which cause property damage. The "insuring agreement" would be rendered meaningless. But, as noted above, there clearly is coverage especially when the defective work causes property damage to other parts of the building.

If Penn National and the Court are correct, there may be no coverage if River City is found liable to Branch solely on the ground of the specific indemnity provision of the subcontract. However, River City could be found liable for other breaches of the subcontract and its warranty as pled in the underlying Complaint. That is why this is a question of the duty to indemnify (which must await trial of the underlying action) and not a duty to defend.

As the "contractual liability" exclusion argument only affects one aspect of the allegations of the underlying Complaint, this exclusion does not clearly preclude recovery for <u>all</u> of the allegations of the underlying Complaint, and it does not bar a duty to defend.

## CONCLUSION

This Court's Order and accompanying memorandum setting forth the reasons for the Order are based upon either a misapprehension of the law, the underlying complaint or the insurance policies provisions. The exclusions relied upon by Penn National and this Court do not clearly and unambiguously preclude coverage for all of the allegations of the underlying Complaint. As such, there is some aspect of the underlying Complaint that could potentially trigger coverage under the Penn National's policies. Therefore, Penn National has a duty to defend (and may, after trial, have a duty to indemnify). Accordingly, Branch respectfully requests that this Court reverse its ruling, deny Penn National's Motion for Summary Judgment and find that Penn National has a duty to defend River City in the underlying action.

WHEREFORE, Branch asks this Court to reconsider its Order; deny Penn National's Motion for Summary Judgment; and find that Penn National has a duty to defend River City in the underlying action.

BRANCH BUILDS, INC.

By:     /s/ Kenneth F. Hardt
Kenneth F. Hardt, Esq. (VSB #23966)
Sinnott Nuckols & Logan, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 893-3861 (Hardt)
(804) 378-2610 (Facsimile)
khardt@snllaw.com
*Counsel for Branch Builds, Inc.*

### CERTIFICATE OF SERVICE

I hereby certify that, on the 22nd day of March, 2022, a true and accurate copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following:

Kevin T. Streit, Esquire
SETLIFF LAW, P.C.
4940 Dominion Boulevard
Glen Allen, VA 23060
(804) 377-1260
(804) 377-1280 (Facsimile)
kstreit@setlifflaw.com
*Counsel for Pennsylvania National*
*Mutual Casualty Insurance Company*

By:     /s/ Kenneth F. Hardt
Kenneth F. Hardt, Esq. (VSB #23966)
Sinnott Nuckols & Logan, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 893-3861 (Hardt)
(804) 378-2610 (Facsimile)
khardt@snllaw.com
*Counsel for Branch Builds, Inc.*

18