IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PENNSYLVANIA NATIONAL MUTUAL )
CASUALTY INSURANCE COMPANY, )
              )
    Plaintiff,        )
              )
v.              )   Civil Action No. 3:21cv365–HEH
              )
RIVER CITY ROOFING, LLC, *et al.*,  )
              )
    Defendants.    )

## MEMORANDUM OPINION
### (Granting Plaintiff's Motion to Reconsider, Denying Defendant's Motion to Reconsider and Vacating Previous Opinion and Order)

THIS MATTER is before the Court on the parties' Motions for Reconsideration (ECF Nos. 52, 54). Plaintiff Pennsylvania National Mutual Casualty Insurance Company ("Plaintiff") filed a Motion for Reconsideration regarding the Court's previous Memorandum Opinion (ECF No. 48) on March 16, 2022. ("Plaintiff's Motion," ECF No. 52.) Defendant Branch Builds, Inc. ("Branch") then filed a Motion for Reconsideration regarding the Court's Order on Motion for Summary Judgment (ECF No. 49) on March 22, 2022. ("Branch's Motion," ECF No. 54.) The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before it, and oral argument would not aid in the decisional process. *See* E.D. Va. Local Civ. R. 7(J). For the reasons stated herein, the Court will grant Plaintiff's Motion for Reconsideration and Deny Branch's Motion for Reconsideration. Additionally, the Court will vacate the Memorandum Opinion (ECF No. 48) and Order

(ECF No. 49) issued on March 3, 2022 and replace it with this Memorandum Opinion regarding Plaintiff's Motion for Summary Judgment ("Summary Judgment Motion").

## I. Rule 54(b) Motions

Federal Rule of Civil Procedure 54(b) states that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Motions for reconsideration of partial summary judgment and other interlocutory orders "are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003). Consequently, it is within the discretion of the district court whether to reconsider and modify partial summary judgment orders. *Id.*; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983).

That said, The United States Court of Appeals for the Fourth Circuit has noted that the law of the case doctrine still guides the district court's discretion in reconsidering interlocutory orders. *Am. Canoe Ass'n*, 326 F.3d at 515. The law of the case doctrine mandates an earlier decision of a court in the same case becomes "the law of the case" and must be followed unless "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988) (internal quotation marks omitted); *Al Shimari v. CACI Int'l, Inc.*, 933 F. Supp. 2d 793, 798 (E.D. Va. 2013) (citing *Am. Canoe Ass'n*, 326 F.3d at 515).

Applying that doctrine to the case at hand, the Court agrees with Plaintiff that a portion of its previous Memorandum and Order on Summary Judgment was clearly erroneous and would work manifest injustice. The Court admits that it was so preoccupied with the parties' arguments on the duty to defend and applying the Eight Corners Doctrine that it overlooked an aspect of the law on the duty to indemnify. Thus, the Court will vacate its previous Memorandum Opinion and Order issued on March 3, 2022 and correct its decision on the duty to indemnify below.

On the other hand, the Court does not agree with Branch's assertion that the Court based its decision on "either a misapprehension of the law, the underlying complaint or the insurance policies provisions" (Branch's Mem. Supp. at 17, ECF No. 55.) While the Court does not believe it misapprehended anything, or that it made a clearly erroneous decision with respect to the duty to defend, it may be beneficial to the parties if the Court clarified its decision. Therefore, the Court has provided some additional clarification in this opinion.

## II. STANDARD OF REVIEW

The standard of review for summary judgment is well settled in the Fourth Circuit. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

3

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. A material fact is one that might affect the outcome of a party's case. *Id.* at 248; *Hogan v. Beaumont*, 779 F. App'x 164, 166 (4th Cir. 2019).

The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion. *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020). Accordingly, to deny a motion for summary judgment, "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate." *Thompson Everett, Inc. v. Nat'l Cable Adver.*, 57 F.3d 1317, 1323 (4th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). When applying the summary judgment standard, courts must construe the facts in the light most favorable to the nonmoving party and may not make credibility determinations or weigh the evidence. *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007).

### III. BACKGROUND

The parties submitted their respective statements of undisputed material facts pursuant to the Court's Local Rules, and the Court has reviewed the statements. As

required at the summary judgment stage, the Court resolves all genuine disputes of material fact in favor of the non-moving party and disregards those factual assertions that are immaterial. *Anderson*, 477 U.S. at 248, 255. Applying this standard, the Court concludes that the following narrative represents the facts for purposes of resolving Plaintiff's Summary Judgment Motion.

This action stems from an underlying state court case in the Circuit Court for the City of Richmond. In that case, Branch filed suit against River City and another subcontractor. (State Compl. ¶¶ 2–3, ECF No. 1-6.) Branch was the general contractor for Shockoe Valley View Genesis, LLC ("Genesis") in charge of constructing the Shockey Valley Apartments (the "Project" or "apartments"). (*Id.* ¶ 4.) River City was a subcontractor of Branch who would cover "all roofing and all aluminum and composition siding at the Project according to the plans and specifications." (*Id.* ¶ 9.) The two entered into a contract in which River City warranted its materials and work, agreed to indemnify Branch, and agreed to make Branch an additional insured under its commercial general liability ("CGL") insurance contract. (*Id.* ¶¶ 8, 34, 36, 37.) A certificate of occupancy was issued for the Project on April 5, 2017 and in October 2017, Genesis reported defects in the construction.[1] (Pl.'s Mem. Supp. SJ ¶¶ 8–9, ECF No. 34; State Compl. ¶ 10.)

As it relates to River City, Genesis alleged "that the roof, aluminum and composition siding were not constructed or supplied in accordance with the plans,

---

[1] Branch opposes the inclusion of any facts outside of the Complaint or the insurance policies, however, the Court believes inclusion of some extrinsic facts is necessary for a complete background on the matter even though those facts do not impact the Court's analysis of the Summary Judgment Motion.

5

specifications and industry standards." (State Compl. ¶ 12.) Consequently, "there was water intrusion and property damage to the apartments." (*Id.*) Branch repaired or compensated Genesis for all damage done to the apartments. (*Id.* ¶¶ 15, 16.) River City never indemnified Branch for the costs of repair or damages. (*Id.* ¶ 17.) Branch then filed the state action claiming breach of contract by River City and another subcontractor and demanding judgment of $3,000,000 to cover the expenses Branch incurred. (*Id.* at 9.)

Plaintiff issued a CGL insurance contract and an umbrella liability insurance contract (the "policies") to River City on March 15, 2016. (Pl.'s Mem. Supp. SJ ¶¶ 3–4.) Under the policies, Plaintiff agreed to insure River City "subject to the contracts' respective terms, conditions, limitations and exclusions" including the payment of premiums. (*Id.* ¶¶ 21–22.) Plaintiff alleges that River City failed to pay the premiums in July 2017 and, thus, Plaintiff notified River City that both policies would be "canceled effective July 31, 2017, at 12:01 a.m." (*Id.* ¶ 24; Notices, ECF Nos. 1-3, 1-4.) River City never paid the premiums, therefore, the insurance policies were canceled effective July 31, 2017. (Pl.'s Mem. Supp. SJ ¶ 27.)

Plaintiff filed its Complaint in this Court on June 8, 2021 seeking a declaratory judgment that it has no duty to defend River City in the underlying state action, pay any amount which River City is found liable for in the underlying action, or pay any amount to River City, Branch or any other party in the underlying action. (Compl. at 21, ECF No. 1.) Branch filed its Answer to the Complaint on June 22, 2021 (ECF No. 6) and

6

River City never made an appearance or filed an answer in this matter. The Clerk entered default against River City on August 4, 2021.[2] (ECF No. 19.)

## IV. ANALYSIS

When a federal court has diversity jurisdiction, it must apply the choice of law rules of the forum state, here, Virginia. *CACI Int'l, Inc. v. St. Paul Fire and Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). In Virginia, "the law of the place where an insurance contract is written and delivered" applies. *Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993); *Penn. Nat'l Mut. Cas. Ins. Co. v. Block Roofing Corp.*, 754 F. Supp. 2d 819, 822 (E.D. Va. 2010). The policies at issue here were delivered to River City at their office in Henrico, Virginia, thus, Virginia's substantive law governs. (Pl.'s Mem. Supp. SJ at 10; ECF Nos. 1-2, 1-3.)

"[A]n insurer's duty to defend . . . is broader than [the] obligation to pay, and arises whenever the complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy." *AES Corp. v. Steadfast Ins. Co.*, 725 S.E.2d 532, 535 (Va. 2012) (internal quotation omitted). There is a well-established principle in Virginia, known as the Eight Corners Rule, that courts must only consider the allegations in the complaint and the insurance policy itself when deciding if there is a duty to defend. *Id.*; *Penn. Nat'l*, 754 F. Supp. 2d at 822–23; *see St. Paul Fire*, 566 F.3d

---

[2] Plaintiff filed a Motion for Default Judgment as to River City as well as this Motion for Summary Judgment. (ECF No. 31.) Branch requests that the Court either defer entry of default judgment until the underlying state action is resolved or hold that the entry of default judgment against River City does not affect Branch in the underlying action. (ECF No. 35 at 6.) Plaintiff concedes that the entry of default judgment should be deferred if the Court does not grant the Motion for Summary Judgment. (Pl.'s Reply SJ at 3, ECF No. 46.) Because the Court now finds that Plaintiff has no duty to defend or indemnify River City, Plaintiff's Motion for Default Judgment as to River City (ECF No. 31) will also be granted.

at 153. Virginia also recognizes the "Potentiality Rule" which states that "an insurer's duty to defend is triggered if there is any possibility that a judgment against the insured will be covered under the insurance policy." *St. Paul Fire*, 566 F.3d at 155 (internal quotations omitted); *Bohreer v. Erie Ins. Grp.*, 475 F. Supp. 2d 578, 584 (E.D. Va. 2007). However, if it clearly appears that the insurance policy would not cover any of the allegations in the complaint, the insurer has no duty to defend. *Penn. Nat'l*, 754 F. Supp. 2d at 823; *AES Corp.*, 725 S.E.2d at 535–36.

First, Plaintiff urges the Court to look to precedent of other states which have adopted a broader application of the Eight Corners Rule and have ruled that declaratory judgment on the duty to defend and the duty to indemnify may be issued simultaneously when the issue is based on nonpayment of a premium. (Pl.'s Mem. Supp. SJ at 11.) Relatedly, Plaintiff points out that other states allow courts to consider extrinsic evidence in deciding whether the insurance policy was still in place at the time of the alleged loss. (*Id.*) However, Virginia strictly adheres to the Eight Corners Rule, limiting the scope of review to the four corners of the complaint and the four corners of the policy. *Penn. Nat'l*, 754 F. Supp. 2d at 822–23; *St. Paul Fire*, 566 F.3d at 153; *AES Corp.*, 725 S.E.2d at 535. Plaintiff has cited no cases where Virginia courts, or federal courts applying Virginia law, have considered extrinsic evidence in reviewing the duty to indemnify, and the duty to defend simultaneously, based on extrinsic evidence. Therefore, the Court's analysis is constrained to the underlying Complaint and the insurance policies Plaintiff issued to River City.

Next, Plaintiff argues that the policies were cancelled prior to the manifestation of the property damage. (Pl.'s Mem. Supp. SJ at 13.) Plaintiff then implores the Court to adopt the "manifestation trigger rule" in determining when the property damage occurred. (*Id.* at 15–17.) However, this argument relies on extrinsic evidence which the Court may not consider under the Eight Corners Rule.[3] Nowhere in the underlying Complaint or the policies does it say that the policies were cancelled before the end of the policy period. While it is clear from the policy cancellation notices that the policies were cancelled in July 2017, it is not clear from the eight corners that constrain the Court's analysis.[4] Consequently, the policy cancellations cannot guide the Court's determination on the duty to defend.

Plaintiff next asserts that "River City's allegedly faulty work . . . is not insured" because the damages arose from River City's own work, the work and materials were defective, and the contractual liability exclusion applies. (*Id.* at 21–28.) In the State Complaint, Branch alleges that River City breached its contract with Branch. (State Compl. ¶¶ 34–36.) Specifically, Branch argues that River City warranted that its work was free from deficiencies in workmanship and materials and that it would indemnify and

---

[3] At oral argument, Plaintiff's counsel made a comment that the cancellation notices were part of the face of the policy. However, this argument was not raised in Plaintiff's brief and does not comport with their argument urging the Court to consider extrinsic evidence. Further, Plaintiff provided no legal backing to support the assertion that a cancellation notice issued months after the policy was signed would become part of the face of the policy.

[4] While the Court may not base its analysis on the cancellation due to nonpayment because it is not within the eight corners, the Court is troubled by the thought that an insurance company would have to expend the resources to defend an insured when the insured has failed to pay their premiums. However, since Virginia courts adhere so strictly to the Eight Corners Rule, the Court will not consider the extrinsic cancellation notices.

9

hold Branch harmless from claims related to River City's work. (*Id.*) Branch asserts that the work and materials provided by River City were defective and that Branch incurred expenses as a direct result. (*Id.* ¶ 38.) At first glance the policies may seem to cover the damage alleged by Branch, however, the insurance policies include a vast number of "exclusions," which bar coverage in this case.[5] (CGL Policy at 23–28, ECF No. 1-2.)

The policies apply to "property damage" only if it was caused by an "occurrence that takes place in the 'coverage territory.'" (CGL Policy at 22.) *Excluded* from this is "property damage to your work arising out of it or any part of it." (*Id.* at 27.) "Your work" is defined as "work or operations performed by you or on your behalf and" includes warranties or representations as to the "fitness, quality, durability, performance or use of 'your work.'" (*Id.* at 40.) Additionally, "occurrence" is defined as "an *accident*, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 38 (emphasis added).) The State Complaint alleges that "the roof, aluminum and composition siding were not constructed or supplied in accordance with the plans, specifications and industry standards." (State Compl. ¶ 12.) Some of the alleged damage to the apartments was clearly River City's own work or arose from River City's work. River City was contracted to handle all of the roofing, which Genesis alleges was faulty and led to water intrusion and damage. (*Id.* ¶ 12.) Any damage to the work that River City did would clearly be excluded under the "your work" exclusion.

---

[5] Both policies include many of the same exclusions and definitions. Unless otherwise stated, an exclusion or definition cited is present in both policies.

The State Complaint also alleges that River City's faulty work led to damage to nondefective parts of the Property as well. (*Id.* ¶¶ 10, 39, 44.) The Fourth Circuit, and two Virginia Circuit Courts have considered and "addressed the issue of whether the damage a subcontractor's defective workmanship causes to otherwise nondefective work constitutes 'an occurrence' under a CGL policy." *Erie Ins. Exch. v. Salvi*, 86 Va. Cir. 132, 134–35 (Va. Cir. Ct. 2013) (comparing *Stanley Martin Cos., Inc. v. Ohio Cas. Grp.*, 313 Fed. App'x 609 (4th Cir. 2009) and *RML Corp. v. Assurance Co. of Am.*, No. CH02-127 (Va. Cir. Ct. Dec. 31, 2002)). In *Stanley Martin*, the Fourth Circuit found that, based on the exclusions in the CGL policy, damage to nondefective parts of the property was "an 'unintended accident'" and, thus, not excluded from coverage under the policy. *Stanley Martin*, 313 Fed. App'x at 614; *Erie*, 86 Va. Cir. at 135. The Fourth Circuit, however, distinguished the policy at issue from the policy in *RML Corp.*, because that policy included an additional exclusion. 313 Fed. App'x at 613 n.1 (finding one Virginia lower court held "that a general contractor is responsible for its subcontractor's defective workmanship, such that any defective work, as well as any damage it may cause to nondefective components is foreseeable and therefore not an occurrence); *Erie*, 86 Va. Cir. at 135.

The distinguishing exclusion found in the CGL policies in *RML Corp.* and *Erie* but absent in *Stanley Martin* "exclude[d] from coverage property damage to . . . 'that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.'" *Erie*, 86 Va. Cir. at 135 (quoting exclusion (j) from the CGL policy in *RML Corp.*). This *same* exclusion is in the policies at issue here.

11

(CGL Policy at 26 (Exclusion j(6)).) The Virginia Circuit Court in *Erie* found that this exclusion meant that "structural defects caused to otherwise nondefective components of the [property] by the subcontractor's defective workmanship were not an 'occurrence' under the terms of the policy." 86 Va. Cir. at 136. The court then went on to say, "even if the [c]ourt were to find that these circumstances amounted to an 'occurrence,' exclusion (j) would nonetheless preclude coverage for the damages claimed." *Id.* Consequently, because the exact same exclusions are in the policies at issue here, the Court finds that any damage to nondefective work caused by River City's defective work is not an occurrence and, even if it was, it would be excluded from coverage pursuant to exclusion (j)(6).

Further, the policies include an exclusion for "impaired property" which bars coverage for damage to certain portions of the property other than River City's work. (CGL Policy at 37.) "Impaired property" includes "tangible property, other than . . . 'your work,' that cannot be used or is less useful because . . . it incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous." (*Id.*) This exclusion only applies if the property can be restored by repair, removal, or adjustment of "your work." (*Id.*) This would also exclude some of the damage Branch is alleging. Branch asserts that River City's workmanship and materials were defective, and that defective work caused damage to the roof itself and other parts of the property. (State Compl. ¶¶ 38–39, 43–44.) Moreover, Branch repaired River City's allegedly insufficient work and that is why it filed suit against River City to recoup the expenses it incurred by repairing the roofing and related damage. (*Id.* ¶¶ 15–16.)

12

Therefore, any damage, whether to River City's own work or other nondefective parts of the property, would not be an "occurrence" or would be excluded by the "your work" exclusion, exclusion (j), or the "impaired property" exclusion.

Even if River City's faulty workmanship and the resulting damage was an occurrence, the policies contain a "contractual liability" exclusion. (CGL Policy at 23.) This excludes "property damage" the insured is obligated to pay "by reason of the assumption of liability in a contract or agreement" and does not apply to liability that the insured would incur absent the contract. (*Id.*) The only liability River City would have absent any contract or agreement is liability in tort. Although Genesis alleges that the work was done negligently, Branch's claims against River City all stem from the breach of a contractual duty. (State Compl. ¶¶ 40, 45.) Virginia courts have held that allegations of "negligent performance of contractual duties . . . are simply not actionable in tort, and do not convert the malfunction or damage . . . into an occurrence." *W. World Ins. Co. v. Air Tech, Inc.*, No. 7:17cv518, 2019 WL 14434666, at *7 (W.D. Va. Mar. 29, 2019) (quoting *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998)) (internal quotations omitted). Thus, there being only a claim for contractual liability in the State Complaint, the contractual liability exclusion applies and would bar coverage under the policies even if Branch prevailed on its claims against River City.

The facts of this case are similar to those of *Union Ins. Co. v. Williams Contracting Inc.*, in which the district court found that the contractual liability exclusion denied coverage for the contractor's "failure to follow the original plans . . . and to perform the subject tasks of the [c]ontract in a reasonable and workmanlike manner."

13

No. 3:05cv75, 2006 WL 1582405, at *5 (W.D. Va. June 2, 2006). The complaint in *Williams* included, among other allegations, breach of contract and breach of warranty claims. *Id.* at *2. The court found the contractor had no liability to the property owners absent the construction contract and, thus, the contractual liability exclusion precluded coverage. *Id.* at *5; *see also State Farm Fire and Cas. Co. v. Frank*, No. 4:10cv99, 2011 WL 1883987, at *10 & n.5 (E.D. Va. Apr. 20, 2011). Similarly, the Complaint at issue here *only* alleges breach of contract and breach of warranty claims. (State Compl. ¶¶ 40, 45.) The policies also include the same contractual liability exclusion as the policy in *Williams*. (CGL Policy at 23.) Thus, coverage for the breach of contract claim and breach of warranty claim would likewise be excluded by the contractual liability exclusion. *Id.* at *5–7.

In its response and during oral argument, Branch attempted to refute Plaintiff's arguments by simply saying they are indemnity arguments and not duty to defend arguments. (Resp. Opp'n SJ at 14–15, ECF No. 36.) Yet, the exclusions Plaintiff cites are within the four corners of the policies, and thus, it is proper for the Court to consider them under the Eight Corners Rule. *See Penn. Nat'l*, 754 F. Supp. 2d at 822–23. Therefore, Branch's insistence that they are irrelevant at this stage is misplaced. Finally, Branch mentions, just briefly, that River City's work damaged the property and that Genesis could have sued River City under a tort-liability theory. However, the State Complaint only alleges breach of contract claims and, as discussed above, River City's duty to both Branch and Genesis is contractual. Any judgment against River City in the

underlying action would be for contractual liability, which is excluded by the policies' contractual liability exclusion.

The language of the policies is fraught with exclusions, exceptions to exclusions, definitions, and subsequently added provisions, but an in depth reading of the policies leads the Court to conclude there is no possibility that a judgment against the insured will be covered under the policies. Virginia courts have stressed the importance of the Potentiality Rule "wherein 'an insurer's duty to defend is triggered if there is any possibility that a judgment against the insured will be covered under the insurance policy.'" *St. Paul Fire*, 566 F.3d at 155 (quoting *Bohreer*, 475 F. Supp. 2d at 584). Nonetheless, "if it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations, it has no duty to defend." *AES Corp.*, 725 S.E.2d at 535–36; *see Penn. Nat'l*, 754 F. Supp. 2d at 823. Here, every allegation against River City is excluded by one of the policies' many exclusions. Beyond even those exclusions, the contractual liability exclusion, which encompasses all of Branch's allegations regarding River City's breach of contractual obligations, forecloses any argument that Plaintiff may be liable under the policies.

In addition to determining the duty to defend, Plaintiff asks the Court to declare that it has no duty to indemnify any party in the underlying action. The duty to indemnify is broader than the duty to defend and "[u]nlike the duty to defend . . . , a duty to indemnify springs from the facts actually discovered or proven at trial." *Penn Nat'l*, 754 F. Supp. 2d at 827. However, "no such factfinding is necessary if there is no duty *to defend*." *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004).

15

Consequently, if a court finds there is no duty to defend, there is also no duty to indemnify. *Id.*; *see Builders Mut. Ins. Co. v. Futura Group, L.L.C.*, 779 F. Supp. 2d 529, 534 (E.D. Va. 2011); *Selective Way Ins. Co. v. Crawl Space Door System, Inc.*, 162 F. Supp. 3d 547, 552 (E.D. Va. 2016). Therefore, because the Court finds that Plaintiff has no duty to defend River City in the underlying action, Plaintiff also has no duty to indemnify any party in the underlying action.

## V. CONCLUSION

Accordingly, because no judgment, based on the allegations against River City, would be covered under the policies, there is no genuine dispute as to any material fact regarding the duty to defend. Therefore, this Court concludes that Plaintiff does not have a duty to defend River City in the underlying state action and, accordingly, has no duty to indemnify.

An appropriate Order will accompany this Memorandum Opinion.

It is so ORDERED.

/s/
Henry E. Hudson
Senior United States District Judge

Date: April 21, 2022
Richmond, VA